**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0517-16T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

KENNETH D. DAWKINS,

    Defendant-Appellant.

_____

Submitted July 18, 2017 — Decided July 27, 2017

Before Judges Reisner and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 14-10-0844.

Joseph E. Krakora, Public Defender, attorney for appellant (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).

Christopher S. Porrino, Attorney General, attorney for respondent (Emily R. Anderson, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Kenneth D. Dawkins appeals from his conviction, based on his guilty plea to third-degree possession of a controlled

dangerous substance (CDS) with intent to distribute, N.J.S.A. 2C:35-5(b)(3) and -5(a)(1), and second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b). He has not appealed from the aggregate sentence of seven years in prison with a four year parole bar. We affirm.

Defendant's appeal raises one point of argument, focusing on the denial of his suppression motion:

> THE EVIDENCE FOUND IN DEFENDANT'S HOME SHOULD BE SUPPRESSED BECAUSE THE STATE DID NOT PROVE KNOWLEDGE OF THE RIGHT TO REFUSE CONSENT, WHICH IS AN INDISPENSABLE FACET OF VOLUNTARY CONSENT.

The following evidence was presented at the suppression hearing. According to Detective Alston, while patrolling a high crime area of South Plainfield at about 10 p.m., he spotted a large group of individuals standing in the yard of a house where he knew none of them lived. One of the individuals appeared to be urinating in the yard. He asked the group who they were visiting at the premises. When they responded that they were there to visit "Chris" on the third floor, the Detective entered the open door of the house, which he knew contained several apartments. His purpose was to check with Chris to be sure that the large group of individuals were invitees and "not just taking over a property that they weren't supposed to be at."

While climbing the unlit interior stairs to the third floor apartment, using a flashlight to light his way, Alston encountered two individuals, including defendant. On seeing Alston, defendant dropped a small baggie which appeared to contain drugs. At that point, Alston placed defendant under arrest and called for back-up. Defendant told Alston that he lived on the third floor with his girlfriend Chris. When Alston told defendant that he intended to go up and talk to Chris, defendant told him to "go ahead, she's up there now." Another officer took defendant downstairs, while Alston proceeded to the third floor.

Chris answered the door when Alston knocked, and he informed her that he had just arrested defendant leaving her apartment with drugs, and that there was a large group of people outside claiming to be there to visit her. Chris became upset, denied that the group was there to see her, and insisted that she was at home with her children. After obtaining her permission to enter the apartment, Alston asked Chris where defendant was just before he left the apartment. She showed him a closet that appeared to contain baby clothes. He then asked her if she would sign a consent to search form. According to Alston, he advised Chris that "she didn't have to sign" the consent form, and could refuse to allow a search. Chris did not want to sign the form, but she orally consented to the search because "she was highly upset about

A-0517-16T4

. . . defendant being arrested possibly with CDS downstairs." She also indicated that she was angry at defendant because she was paying all the bills and he was not giving her any money.

Alston testified that a search of the apartment revealed drugs and a gun hidden in a closet and another gun hidden under a mattress. He testified that Chris was quite upset at learning that defendant was keeping CDS and guns in the apartment where her children were living.

FBI Special Agent Orr testified that during a subsequent interview with Chris, whose full name was Christine Vazquez, she told him that she voluntarily allowed the Plainfield police to search the apartment. She also told Orr that the police were very polite to her. She also mentioned that when they searched defendant and found some money, they gave it to her before taking defendant away to the police station.

Vazquez testified that the police entered the apartment without her consent and searched the premises without requesting or obtaining her consent. According to Vazquez, after the police found the guns, they threatened to arrest her if she did not sign a consent to search form. She testified that the police did not find any drugs in the apartment. She also denied telling Orr that she had consented to the search.

4

In a written opinion, Judge Joseph P. Donohue found that Detective Alston and Special Agent Orr were credible witnesses. He also found that "to the extent that their testimony differs from" that of Vazquez, "their version of events is the more credible and believable version." Accordingly, the judge found as fact that Vazquez gave the police permission to enter her apartment, and that she voluntarily consented to the search after being advised of her right to refuse consent. He also found that the police were justified in entering the open, unsecured front door of the apartment building and were lawfully in the viewing area when defendant dropped the bag of drugs.

On a motion to suppress, we defer to the trial judge's findings so long as they are supported by "sufficient evidence in the record." State v. Dunbar, ___ N.J. ___, ___ (2017) (slip op. at 30) (2017) (quoting State v. Hubbard, 222 N.J. 249, 262 (2015)). Defendant contends that the judge's findings are inconsistent with the hearing testimony. However, after reviewing the record, we find no basis to disturb Judge Donohue's well-explained credibility determinations and factual findings. Based on the facts as the judge found them to be, his legal conclusions are unassailable, and we affirm for the reasons stated in his opinion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0517-16T4